KEITH D. CABLE (SBN 170055)
**CABLE GALLAGHER**
1024 Iron Point Road, Suite 100
Folsom, CA 95630
Telephone: (916) 608-7995
Facsimile: (916) 608-7986

Attorneys for Plaintiff
EDWARD L. KEMPER

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA
### SACRAMENTO DIVISION

| | |
|---|---|
| EDWARD L. KEMPER,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>FOLSOM CORDOVA UNIFIED SCHOOL DISTRICT, a public entity,<br><br>　　　　Defendant. | Case No.: **2:08-CV-02777-GEB-DAD**<br><br>**SECOND AMENDED COMPLAINT FOR INJUNCTIVE, DECLARATORY AND MONETARY RELIEF**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff, Edward L. Kemper ("KEMPER"), sues Defendant, FOLSOM CORDOVA UNIFIED SCHOOL DISTRICT (hereinafter "FCUSD"), alleging:

## INTRODUCTION

1. This action seeks to redress FCUSD's systemic failure to provide Plaintiff KEMPER the minimum legally required access to its public schools, campuses, facilities, buildings and rights-of-way which are owned, operated, controlled and/or maintained FCUSD. Specifically, this action is brought by Plaintiff KEMPER who, because of his physical disabilities, has been repeatedly denied access to the programs, services and activities of FCUSD which are routinely made available to non-disabled individuals, or he has otherwise been subjected to disability discrimination by FCUSD. As a public entity, FCUSD offers to the public a number of programs, services and activities to parents and step-parents of children – such as Plaintiff – where those

children or step-children attend schools in their public school system, including, but not limited to, Back to School Night, choir performances, Open House, parent-teacher conferences, sporting events and related public functions. Moreover, FCUSD expressly or impliedly invites parents and step-parents, such as Plaintiff, to enter its school campuses to drop off and pick up their school-age children. Unfortunately, however, the public facilities identified herein are rife with multiple and pervasive architectural barriers violative of federal and state accessibility standards, many of which constitute safety hazards to persons with mobility disabilities, such as Plaintiff.

2. FCUSD has known that it was required under Title II of the Americans with Disabilities Act of 1990 ("ADA") to implement structural changes to create equal access to its facilities by no later than January 26, 1995. Likewise, FCUSD has known for over thirty-years that it was required by Section 504 of the Rehabilitation Act of 1973 and its accompanying regulations to have identified and changed its unequal facilities to create equal access to all public facilities owned, operated, controlled and/or maintained by FCUSD. Despite its obligations to comply with federal and state disability non-discrimination laws, FCUSD has failed to do so and refuses to ensure such compliance.

3. This is an action for declaratory and injunctive relief pursuant to Title II of the Americans with Disabilities Act, 42 U.S.C. §§ 12131, *et seq.* ("ADA"), and its implementing regulations; Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 701, *et seq.* ("Rehab Act"); and Cal. Gov't Code §§ 11135, *et seq.* ("Cal. Gov't Code"). In addition to claims for declaratory and injunctive relief, Plaintiff KEMPER also seeks statutory, compensatory and exemplary damages under the Disabled Persons Act, Cal. Civ. Code §§ 54, *et seq.* ("DPA"), and the Unruh Civil Rights Act, Cal. Civ. Code §§ 51, *et seq.* ("Unruh Act").

4. Plaintiff KEMPER has no adequate remedy at law and unless Defendant FCUSD is preliminarily and permanently enjoined, Plaintiff will continue to suffer

irreparable harm as a result of his exclusion from the programs, services, and activities identified herein, or be subjected to ongoing discrimination by FCUSD.

## JURISDICTION

5. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343, and supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

6. This action is within the jurisdiction of the Court:

A. Plaintiff KEMPER is a resident of the City of Folsom, Sacramento County, California, and he is *sui juris*. KEMPER is a qualified individual with a disability within the meaning of the ADA and Rehab Act due to suffering from bilateral arthritis requiring the use of a wheelchair (and sometimes, cane) and a service dog[1]. As such, Plaintiff KEMPER is substantially limited in the major life activity of "walking". At the time of the filing of the original Complaint, Plaintiff KEMPER had two step-children who attended Folsom High School, and presently has one step-child attending this facility. Plaintiff KEMPER accompanies his step-child to, from and onto the Folsom High School campus on a daily basis in his motorized wheelchair, and enters the campus for events throughout the year, including Back to School nights, conferences, meetings, open houses and choir events. During the 2007-2008 school year, Plaintiff KEMPER made daily or semi-daily trips in his motorized wheelchair to, from and onto the Gold Ridge Elementary School campus and the Folsom Middle School campus.

B. FCUSD is a public entity with 50 or more employees. In addition to its administrative offices, FCUSD has at least twenty-one (21) elementary schools, four (4) middle schools, three (3) high schools, and six (6) continuing/alternative education schools. Upon information and belief, FCUSD receives federal financial assistance within the meaning of the Rehab Act. Upon information and belief, FCUSD receives financial assistance from the State of California within the meaning of Cal. Gov't Code

---

[1] Plaintiff's service dog "Dolores" passed away after the filing of the initial Complaint.

§11135, et seq. FCUSD has the authority to install, alter, repair, and maintain its public schools, campuses, facilities, buildings and property, including classrooms, auditoriums, parking lots, rights-of-way, sidewalks, paths of travel and curb cuts within its area of responsibility that are not solely the responsibility of other private or public entities.

7. Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b):

A. All of the events giving rise to this claim occurred in this Judicial District; and

B. The real property which is the subject of this action is located in this Judicial District.

## BACKGROUND

8. According to the ADA, the Rehab Act, and related California state civil rights laws, a public entity illegally discriminates when it denies an individual's full and equal participation in any program, service or activity; denies the individual's receipt of its benefits due to disability; or subjects a qualified disabled person to discrimination.

9. Plaintiff KEMPER, as a disabled person, is legally entitled to equal access to the public schools, campuses, facilities, buildings and real property that FCUSD owns, leases (leases to) and/or operates, as well as equal access to the rights-of-way, including parking, sidewalks, paths of travel and curb cuts. FCUSD must provide equal access to Plaintiff KEMPER by compliance with Title II of the ADA, Section 504 of the Rehab Act, and related California state civil rights laws.

10. A public entity's compliance with the ADA and the Rehab Act is measured in part by the minimum technical standards set forth by the federal government.[2] The California state building code also applies, which is often more demanding than the federal minimum requirements for accessibility.[3] Most importantly, the civil rights of disabled individuals – the grounds for the creation of technical standards – must also be

---

[2] See 28 C.F.R. part 35 and 49 C.F.R. part 37.

considered to determine the accessibility of a program service or activity of a public entity.

11. FCUSD has discriminated, and continues to discriminate, against Plaintiff KEMPER due to his disability in its deficient provision of, or lack of access to, public schools, campuses and property, including public rights-of-way, as demonstrated by numerous and systemic violations of the minimum technical standards of the ADA. FCUSD has had an ongoing obligation to provide accessibility since the effective date of the ADA, which is January 26, 1992. In the 19 years since the passage of the ADA, FCUSD has had the ability to designate funds to become completely accessible, as per compliance with the technical requirements of the ADA. Yet, even after the passage of the ADA, FCUSD continues to build inaccessible and non-compliant public schools, campuses and facilities.

12. Within the two years preceding the filing of the initial Complaint, and thereafter, Plaintiff KEMPER, visited, or attempted to visit, a number of school campuses within the FCUSD, including, but not limited to, Folsom High School, Folsom Middle School, Gold Ridge Elementary School, Vista Del Lago High School, and Sutter Middle School, as well as the FCUSD administrative offices in Folsom, California. During those visits to the campuses referenced above, Plaintiff KEMPER has encountered a number of architectural barriers including, but not limited to:

**Folsom High School:**

**(1)** excessively-sloped disabled parking spaces in the vicinity of the front office (3.3 % cross-slope; 14.3 % running slope); **(2)** lack of smooth transition at access aisle near truncated domes; **(3)** inaccessible entrance to front of school due to steps; **(4)** inaccessible stairway to back of office; **(5)** lack of smooth transition at curb ramp near front office in vicinity of truncated domes; **(6)** lack of signage indicating accessible path

---

[3] See California Code of Regulations, Title 24.

of travel at school entrance; **(7)** inaccessible path of travel (stairs) between learning resource center and science-engineering building; **(8)** ramp at rear door of administrative office lacks handrail extensions; **(9)** access to public phone blocked by trash can at learning resource center; **(10)** sink pipes not wrapped in men's restroom; **(11)** lavatory door lacks self-closing mechanism; **(12)** men's restroom door requires in excess of 5 pounds of force to open; **(13)** entrance to east campus parking lot lacks smooth transition; **(14)** disabled seating "cut-outs" at outdoor amphitheater cluttered with debris and requires wheelchair users to traverse large storm drains; **(15)** ticket booth at front of stadium has a 9.4% running slope; **(16)** inaccessible drinking fountain in stadium due to path of travel reduced to 27" between curb and front of fountain, reduced to 22" in some areas; **(17)** path of travel inside stadium only 42" (fence to curb), reduced to 41" in other areas; **(18)** access aisles incorrectly placed on driver's side of disabled parking spaces near Performing Arts Theater and tennis courts (space nos. T7, T12, and T17); **(19)** disabled parking space no. T17 has a 3.9% cross-slope, and space nos. T16 and T17 have cross-slopes of 3.9%; **(20)** ramp at south of Performing Arts Theater (south side corridor) lacks a 48" path of travel (only 34 ¼");

**(21)** <u>sidewalks in following areas are excessively sloped</u>: **(a)** 9.5 % running slope at bike rack area **(b)** 9.1% running slope near room B103; **(c)** 6.4% running slope east campus sidewalk near parking lot; **(d)** 9.4 % running slope at south-east campus sidewalk near parking lot; **(e)** 5.9% running slope near room C103; **(f)** 5.7% running slope near Cluster B Building; **(g)** 5.8% running slope near room D103; **(h)** 6.0% running slope near room C109; **(i)** 7.0% running slope near room AC102; **(j)** 5.5% running slope between Cluster A Building and International Business Academy; **(k)** 8.1% running slope adjacent to room A105; **(l)** 7.7% running slope in front of World Languages Building; and **(m)** 7.3% running slope at home side of stadium near restrooms; **(22)** <u>ramps in the following areas are excessively sloped</u>: **(a)** ramp in campus interior lacks level landing and has

excessive running slope (slope ranges from 10%-11.8%); **(b)** ramp at multi-purpose room/amphitheater lacks level landing with running slopes ranging from 8.6%-9.9%, and has only 38.5" of clearance between handrails; **(c)** ramp at Theater Building (Jill Solberg) has 9.6% running slope; **(d)** curb ramp between campus and tennis courts has average running slope of 9.1% (9.0-9.2); **(e)** curb ramp at tennis court has 6.4% running slope; **(f)** curb ramp across from stadium entrance (next to tennis court) has a 9.9% running slope; **(g)** ramp to visitor-side stadium seating has 8.7% running slope; **(h)** ramp to home-side stadium seating (north ramp) has running slopes ranging from 8.8%-9%, and lacks level extensions on handrails; **(i)** ramp to home-side stadium seating (south ramp) has running slopes ranging from 8.9%-9.4%; **(j)** side flair on curb ramp between tennis courts and stadium ticket booth has 13.2% slope; **(k)** curb ramp in front of Performing Arts Theater has 9.7% running slope; and **(l)** ramp between disabled parking spaces and Performing Arts Theater has an 8.0% running slope and lacks handrails.

## Public Events at Folsom High School:

**(1)** On or about August 27, 2009, Plaintiff visited the Folsom High School campus to attend "Back to School" night. There was no wheelchair accessible space in the gym, requiring Plaintiff to sit off to the side and which resulted in his view being blocked. Plaintiff had to wait for everyone to leave the gym in order to navigate the exit. Most doors were heavy, and had little, if any, push side clearances. Plaintiff went to the Music room, MU101, but had to sit in the entrance corridor as there was no place for a wheelchair. Plaintiff went to Room A205, but had to sit just outside the classroom due to a lack of turning space or interior clearance for a wheelchair. Plaintiff went to Room B106, but again had to sit just outside the classroom due to a lack of turning space or interior clearance for a wheelchair. Plaintiff never heard one word the teacher said. Plaintiff went to Room B206, but again could not get into the classroom due to the seat

configuration. There was also a lack of push side clearance at the door. Plaintiff then we went to Room A201, where again there was no wheelchair space requiring him to sit off to the side. There was also no push side door clearance due to a trash can located at the door. Plaintiff then went to Room A103, but was unable to get through the classroom.

**(2)** Plaintiff has attended numerous choir events on campus, but most often there is a lack of sufficient wheelchair spaces and many times, non-disabled people are using the wheelchair accessible spaces for their own use. Plaintiff has encountered a similar lack of wheelchair seating at events outside the City of Folsom which were controlled, sponsored, managed and/or operated by Folsom High School and/or FCUSD. Specifically, in March 2009, Plaintiff visited the CSU at Sacramento campus and facilities to attend a FCUSD-sponsored student event involving his step-child. During that visit, Plaintiff encountered a number of unlawful and discriminatory architectural barriers including, without limitation: inaccessible paths of travel; lack of access to performance stage with stairs (Capistrano Hall); lack of compliant handrails; lack of signage indicating accessible paths of travel in and around the disabled parking spaces; heavy doors (excessive weight to open) and ramps lacking level extensions.

**Folsom Middle School:**

**(1)** Plaintiff was denied wheelchair access to class scheduling/class supplies during an evening meeting; **(2)** a lack of wheelchair accessible seating in the gym resulting in Plaintiff being unable to hear the announcements or the staff and teacher introductions; **(3)** the doorways to the gym were too narrow which prevented Plaintiff preventing from using them until the crowds thinned out; **(4)** Plaintiff was denied access to the classrooms for lack of wheelchair space and path of travel clearances; **(5)** there was a lack of accessible route signage throughout campus; **(6)** there was a lack of curb ramps on campus; **(7)** the disabled parking spaces blocked on a daily basis by parents in

vehicles waiting to pick up their children, often the vehicles were parked across the disabled spaces; **(8)** the disabled parking spaces were blocked at every school dance by parents in vehicles; **(9)** barriers due to the district vehicles and contractors parking on the sidewalks by the front office; **(10)** a lack of lowered counter in front office; **(11)** a lack of accessible parking; and **(12)** excessively sloped curb ramps on campus.

**Gold Ridge Elementary School:**

**(1)** Plaintiff generally visited the campus 4 days per week in his wheelchair and encountered non-accessible ramps/transitions on each side of the two driveways he crossed daily; **(2)** when Plaintiff drove his vehicle to drop off and pick up his wife at the school, he encountered non-compliant disabled parking spaces in both lots, to wit: the spaces were too narrow and too short; the spaces lacked appropriate access aisles, and had significant running and/or side slopes; **(3)** there was a lack of proper disabled parking signage, and additional non-compliant signage which illegally allowed the use of the required striped access aisles for loading and unloading by the non-disabled; **(4)** there was a lack of accessible parking; **(5)** excessively sloped curb ramps; **(6)** an inaccessible passenger loading zone; and **(7)** a lack of detectable striping on stairways.

**Vista Del Lago High School:**

**(1)** Plaintiff took his daughter to a dance at Vista Del Lago during his daughter's first semester at Folsom High. Due to the number of staircases on the campus, Plaintiff could not even get out of the parking lot to drop her off; **(2)** the city library attached to this campus (for joint use with Vista Del Lago) is inaccessible, as is the parking lot.

**FCUSD administrative offices in Folsom:**

**(1)** Plaintiff's initial visit to this office pertained to payroll and direct deposit. However, Plaintiff couldn't get his wheelchair up the stairs. There was also no route signage indicating the existence of an "accessible entrance"; **(2)** on a subsequent visit, Plaintiff visited the office premises to handle his wife's name change after they were married.

However, Plaintiff was again denied entrance to the office. Plaintiff was then advised by FCUSD staff about an "accessible entrance" at the back of the office. However, the door was locked and no one answered it when Plaintiff knocked on the door. On one or more visits, Plaintiff also encountered a lack of accessible parking, a lack of ADA-compliant signage, and excessively sloped curb ramps.

**Sutter Middle School:**

**(1)** Plaintiff visited the campus to attend a football game for Gold Ridge Elementary. The path of travel to the football field from the parking lot required Plaintiff to traverse a ramp with a running slope in excess of 12%; **(2)** Plaintiff made another visit to the school office relative to a boundary issue which required Plaintiff to travel through the parking lot due to the lack of an accessible path of travel to the office from the sidewalk.

13. In or around late March or early April 2008, Plaintiff KEMPER requested and received in the mail copies of reports prepared by Disability Access Consultants, Inc., an entity which Plaintiff believes was hired by FCUSD to survey its schools and facilities to determine its belated compliance with the ADA and California Building Code. The reports date back to the 2001-2002 timeframe and evidence literally hundreds of violations of the ADA Accessibility Guidelines (ADAAG) and California Building Code (CBC), including many of the barriers encountered by Plaintiff. A number of schools, including Folsom High School, Vista Del Lago High School, and Gold Ridge Elementary, are entirely post-ADA construction. Despite actual knowledge of the documented violations for well over six years, most, if not all, of the violations have not been remedied and still exist. Therefore, the discrimination is knowing and intentional.

## COUNT I – VIOLATION OF THE ADA

Paragraphs 1-13 are re-alleged and incorporated as if fully set forth herein.

14. Title II of the ADA prohibits a public entity from excluding persons with disabilities from participating in, or denying them the benefits of, the goods, services, facilities, programs, and activities of the entity, or otherwise discriminating against them on the basis of a disability. 42 U.S.C. § 12132. For purposes of Title II, the Ninth Circuit has construed the phrase "program, service or activity" to include "anything a public entity does". Barden, et al. v. City of Sacramento, 292 F.3d 1073 (9th Cir. 2002)(citing Lee v. City of Los Angeles, 250 F.3d 668, 691 (9th Cir. 2001)). As a public entity covered by the ADA, FCUSD offers a number of public programs, services and activities to parents and step-parents of children – such as Plaintiff – where those children or step-children attend schools in their public school system, including, but not limited to, Back to School Night, choir performances, Open House, parent-teacher conferences, sporting events and related public functions. Moreover, FCUSD expressly or impliedly invites parents and step-parents, such as Plaintiff, to enter its school campuses to drop off and pick up their school-age children.

15. The prohibitions of Title II of the ADA are not limited to the discriminatory exclusion of or denial of benefits to disabled individuals from a public entity's "services, programs or activities". Title II also prohibits public entities from subjecting disabled individuals to discrimination by providing that "no qualified individual . . . shall . . . be subjected to discrimination by any such entity." 42 U.S.C. § 12132; Zimmerman v. State of Oregon Department of Justice, 183 F.3d 1161, 1165 (9th Cir. 1999)(the clause "*or be subjected to discrimination by such entity*" plainly and unequivocally prohibits covered entities from engaging in **any** discrimination).

16. A public entity must be held to the ADA's standards of accessibility:

A.  Existing facilities. "A public entity shall operate each service, program, or activity so that the service, program, or activity, when viewed in its entirety, is readily accessible to and usable by individuals with disabilities." 28 C.F.R. § 35.150.

B.  New construction and alteration. After January 26, 1992, a public entity shall design and construct each new facility or part thereof, and each alteration of an existing facility, so that it is readily accessible to and usable by individuals with disabilities. 28 C.F.R. § 35.151(a), (b). A number of schools and offices identified herein, including Folsom High School, Gold Ridge Elementary School, Vista Del Lago High School, and the FCUSD administrative offices were either first constructed or have been altered since 1992. In fact, FCUSD has admitted that Folsom High School, Gold Ridge Elementary School, and Vista Del Lago High School are all "new construction".

17.  KEMPER has been denied the full, equal, and meaningful use, on the basis of his disability, of the public schools, public buildings, public parking, and public rights-of-way as a whole, which is offered by FCUSD as a program, service or activity to the public. In the alternative, the barriers identified herein have resulted, and continue to result, in KEMPER being "subjected to discrimination by any such entity". 42 U.S.C. § 12132.

18.  FCUSD's practices, acts and/or omissions, as set forth above, constitute non-compliance with the requirements of the ADA and demonstrate unlawful discrimination against KEMPER on the basis of his disability, in violation of Title II of the ADA, 42 U.S.C. §§ 12131, *et seq*.

19.  On information and belief, there are other miscellaneous violations by FCUSD of the ADA and regulations promulgated pursuant thereto. Once a full site inspection is performed of FCUSD's facilities by Plaintiff or Plaintiff's representatives can all said violations be identified.

20. FCUSD's daily practices, acts and/or omissions constitute an ongoing and continuous violation of the ADA. Unless FCUSD's unlawful conduct is enjoined, it will continue to violate the law and KEMPER will continue to sustain injuries for which there is no adequate remedy at law. KEMPER is thus entitled to injunctive relief. 42 U.S.C. § 12133.

21. KEMPER has been obligated to retain the undersigned counsel for the filing and prosecution of this action, and is entitled to recover those attorney fees, expert fees, costs and expenses incurred in this case against FCUSD. 28 C.F.R. § 35.175.

## COUNT II – VIOLATION OF THE REHAB ACT

Paragraphs 1 – 21 are re-alleged and incorporated as if fully set forth herein.

22. The Rehab Act prohibits discrimination against qualified individuals with disabilities, including their exclusion from participation in, or denial of a benefit of, any program or activity that receives federal financial assistance. Section 504 defines "program or activity" as "all of the operations" of specific entities, including "a department, agency, special purpose district, or other instrumentality of a State or local government . . . ". 29 U.S.C. § 794(b)(1)(A). As a public entity covered by the Rehab Act, FCUSD offers a number of public programs and activities to parents and step-parents of children – such as Plaintiff – where those children or step-children attend schools in their public school system, including, but not limited to, Back to School Night, choir performances, Open House, parent-teacher conferences, sporting events and related public functions. Moreover, FCUSD expressly or impliedly invites parents and step-parents, such as Plaintiff, to enter its school campuses to drop off and pick up their school-age children.[4]

---

[4] There is no significant difference in analysis of the rights and obligations created by the ADA and the Rehab Act. Zukle v. Regents of Univ. of California, 166 F.3d 1041, 1045, n.11 (9th Cir. 1999); see also Armstrong v. Wilson, 124 F.3d 1019, 1023 (9th Cir. 1997) (noting that "Congress has directed that the ADA and RA be construed consistently") (citing 42 U.S.C. § 12134(b)).

23. On information and belief, FCUSD has received, and continues to receive, federal financial assistance within the meaning of the Rehab Act, including federal assistance in the construction of public schools, facilities, buildings and rights-of-way.

24. KEMPER has been denied the full, equal, and meaningful use, on the basis of disability, of public schools, facilities, buildings, and rights of way as a whole, which is offered by FCUSD as a program or activity to the public.

25. FCUSD's practices, acts and/or omissions, as set forth above, constitute unlawful discrimination against KEMPER on the basis of disability, in violation of the Rehab Act.

26. Upon information and belief, there are other miscellaneous violations by FCUSD of the Rehab Act and regulations promulgated pursuant thereto. Once a full site inspection is performed of FCUSD's facilities by Plaintiff or Plaintiff's representatives can all said violations be identified.

27. FCUSD's daily practices, acts and/or omissions, constitute an ongoing and continuous violation of the Rehab Act. Unless FCUSD's unlawful conduct is enjoined, KEMPER will continue to sustain injuries for which he has no adequate remedy at law. KEMPER is thus entitled to injunctive relief. 29 U.S.C. § 794a.

28. KEMPER has been obligated to retain the undersigned counsel for the filing and prosecution of this action. KEMPER is entitled to recover those attorney fees, expert fees, costs and expenses incurred in this case from FCUSD. 29 U.S.C. § 794a.

**COUNT III – VIOLATION OF CAL. GOV'T CODE § 11135**

Paragraphs 1 - 28 are re-alleged and incorporated as if fully set forth herein.

29. Cal. Gov't Code § 11135(a) prohibits discrimination against persons on the basis of their disabilities through the denial of full and equal access to a service, program or activity by a state-funded recipient. Moreover, if the laws of California

prescribe stronger protections and prohibitions than those prescribed by the ADA, then the programs, services, and activities described in Cal. Gov't Code § 11135(a) shall be subject to the more stringent state laws. Cal. Gov't Code § 11135(b).

30. On information and belief, FCUSD has received, and continues to receive, financial assistance from the State of California within the meaning of Cal. Gov't Code § 11135, *et seq.*, including state assistance in the construction of its public schools, campuses, facilities, buildings and rights-of-way.

31. KEMPER has been denied the full, equal, and meaningful use, on the basis of disability, in its public schools, campuses, facilities, public buildings, and in public rights of way as a whole, which is offered by FCUSD as a program, service or activity to the public.

32. FCUSD's daily practices, acts and/or omissions, as set forth above, constitute unlawful discrimination against KEMPER on the basis of his disability in violation of Cal. Gov't Code §§ 11135, *et seq.*

33. FCUSD's practices, acts and/or omissions, constitute an ongoing and continuous violation of Cal. Gov't Code §§ 11135, *et seq.*  Unless FCUSD's unlawful conduct is enjoined, KEMPER will continue to sustain injuries for which there is no adequate remedy at law.  KEMPER is thus entitled to injunctive relief.

34. KEMPER has been obligated to retain the undersigned counsel for the filing and prosecution of this action.  KEMPER is entitled to recover those attorney fees, expert fees, costs and expenses incurred in this case from FCUSD.

### COUNT IV – VIOLATION OF THE DPA

Paragraphs 1 – 34 are re-alleged and incorporated as if fully set forth herein.

35. The DPA guarantees, <u>inter alia</u>, that persons with disabilities are entitled to full and equal access, as other members of the general public, to accommodations, advantages, facilities, and privileges of covered entities, including "full and free use of

the. . . sidewalks, walkways, public buildings, public facilities, and other public places."

Cal. Civ. Code, § 54, 54.1(a)(1). Moreover, a violation of an individual's right under the ADA is a per se violation of the DPA. Cal. Civ. Code § 54(c).

36.  FCUSD has violated the DPA on a daily basis by denying KEMPER full and equal use of the services, programs or activities of public schools, campuses, facilities, buildings, and rights-of-way. Cal. Civ. Code §§ 54(a), 54.1(a)(1).

37.  On information and belief, FCUSD has committed other miscellaneous violations of the DPA, as well as regulations promulgated pursuant thereto. On information and belief, violations of the DPA still exist and have not been remedied or altered in such a way as to comply with the DPA. Once a full site inspection is performed of FCUSD's facilities by Plaintiff or Plaintiff's representatives can all said violations be identified.

38.  KEMPER's counsel is entitled to recover those attorneys' fees, experts' fees, costs and expenses incurred in this case from FCUSD. Cal. Civ. Code § 54.3(a).

39.  KEMPER has been damaged by FCUSD's refusal to remove barriers to equal enjoyment of FCUSD's programs, services or activities, which has the purpose and effect of discriminating against KEMPER solely because of his disabilities. As a result, KEMPER is entitled to statutory and compensatory damages under the DPA. Cal. Civ. Code § 54.3(a).

40.  KEMPER has complied with the California's Government Claims Act. On September 9, 2008, KEMPER sent by certified mail with return receipt a Claim for Damages on a designated FCUSD claim form. The Claim for Damages was received by FCUSD on September 10, 2008. The claim was rejected by operation of law on October 23, 2008.

### COUNT V – VIOLATION OF THE UNRUH CIVIL RIGHTS ACT

Paragraphs 1 - 40 are re-alleged and incorporated as if fully set forth herein.

Case 2:08-cv-02777-GEB-DAD   Document 24   Filed 10/05/09   Page 17 of 19

41. The Unruh Act guarantees, inter alia, that persons with disabilities are entitled to full and equal accommodations, advantages, facilities, privileges, programs and/or services in all business establishments of every kind whatsoever within the jurisdiction of the State of California. Cal. Civ. Code, § 51(b). Moreover, a violation of an individual's right under the ADA is a per se violation of the Unruh Act. Cal. Civ. Code § 51(f).

42. FCUSD has violated the Unruh Act on a daily basis by denying KEMPER the full and equal accommodations, advantages, facilities, privileges, programs and/or services offered via its public schools, campuses, facilities, buildings, and rights-of-way. Cal. Civ. Code § 51(b).

43. On information and belief, the readily achievable barriers and other violations named herein still exist and have not been remedied or altered in such a way as to comply with the Unruh Act.

44. On information and belief, there are other miscellaneous violations of the Unruh Act and regulations promulgated pursuant thereto by FCUSD. Once a full site inspection is performed of FCUSD's facilities by Plaintiff or Plaintiff's representatives can all said violations be identified.

45. KEMPER's counsel is entitled to recover those attorneys' fees, experts' fees, costs and expenses incurred in this case from FCUSD.

46. KEMPER has been damaged by FCUSD's refusal to remove barriers to equal enjoyment for KEMPER, having the purpose and effect of discriminating against KEMPER solely because of disabilities. As a result, KEMPER is entitled to statutory and compensatory damages under the Unruh Act. Cal. Civ. Code § 52(a).

47. KEMPER has complied with the California's Government Claims Act. On September 9, 2008, KEMPER sent by certified mail with return receipt a Claim for Damages on a designated FCUSD claim form. The Claim for Damages was received

by FCUSD on September 10, 2008. The claim was rejected by operation of law on
October 23, 2008.

## COUNT VI – DECLARATORY RELIEF

Paragraphs 1 - 47 are re-alleged and incorporated as if fully set forth herein.

48.     A present and actual controversy exists regarding the respective rights and obligations of Plaintiff KEMPER and Defendant FCUSD. Plaintiff KEMPER desires a judicial determination of his rights and Defendant FCUSD's obligations in a declaration as to whether, and to what extent, Defendant FCUSD's conduct violates applicable law.

49.     Such a declaration is necessary and appropriate at this time in order that Plaintiff KEMPER may ascertain his rights. Such a declaration is also necessary and appropriate to prevent further harm or infringement of the rights of Plaintiff KEMPER.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff KEMPER demands judgment against Defendant FCUSD, and requests that this Court enter an Order:

A.      Accepting jurisdiction of this case and declaring that Defendant FCUSD's policies, procedures, programs, services and activities are discriminatory and are not in compliance with Title II of the ADA, 42 U.S.C. § 12131 *et seq.*, and the regulations promulgated thereunder; and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and the regulations promulgated thereunder;

B.      Issue preliminary and permanent injunctions enjoining FCUSD immediately to develop plans and implement all actions necessary to bring FCUSD into full compliance with the requirements of Title II of the ADA, Section 504 of the Rehab Act, and the regulations promulgated under each of these Acts.

C.      Directing FCUSD to expeditiously evaluate, neutralize, and make all appropriate modifications in the policies, practices and procedures toward individuals

with disabilities to ensure that they are no longer excluded, denied services, segregated or otherwise treated differently or discriminated against while using or attempting to use FCUSD's programs, services, and activities, including all public schools, public property, and public rights of way in the FCUSD.

  D. Ordering the removal of all architectural barriers that pose safety hazards to individuals with disabilities;

  E. Requiring that all construction, additions or alterations to public schools, facilities, buildings, property and rights-of-way in the FCUSD shall be made readily accessible to and usable by individuals with disabilities;

  F. Awarding reasonable attorney's fees, expert fees, costs, and expenses to Plaintiff KEMPER;

  G. Awarding Plaintiff KEMPER statutory damages as provided by the Unruh Civil Rights Act and Disabled Persons Act;

  H. Awarding such other relief as the Court deems necessary, just and proper; and

  I. Retaining jurisdiction of this case until FCUSD has fully complied with the orders of this Court.

DATED: October 5, 2009

         **CABLE GALLAGHER**

         By: /s/ Keith D. Cable
           KEITH D. CABLE
           Attorney for Plaintiff

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial for all claims which a jury is permitted.

Dated this 5th day of October 2009.

         **CABLE GALLAGHER**

         By: /s/ Keith D. Cable
           Keith D. Cable, Esq.
           Attorney for Plaintiff